```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

MONIQUE DAVIS,

                Plaintiff,              MEMORANDUM & ORDER
                                        20-CV-4282(EK)
        -against-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff Monique Davis challenges the Social Security Administration's denial of her claim for disability insurance benefits. Before the court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant Davis's motion and deny the Commissioner's.

## I.  Background

**A.  Procedural Background**

On April 24, 2018, Davis applied for disability benefits, alleging a disability onset date of June 3, 2017. Administrative Tr. ("Tr.") 12, ECF No. 12. The agency denied her claim. *Id.* On August 19, 2019, an administrative law judge ("ALJ") held a hearing on Davis's claim. *Id.* The ALJ concluded that Davis was not disabled and therefore not entitled to disability benefits. *Id.* at 11. The Appeals Council denied Davis's request for review of the ALJ's decision, rendering it

final.  *Id.* at 1.  Davis timely sought review of that decision in this court.

**B.   The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i), (b).  If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's "physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments").  *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1.  If it does, the ALJ will deem the applicant disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

2

Here, the ALJ determined that Davis had not engaged in substantial gainful activity since her alleged onset date. Tr. 15. The ALJ also determined that Davis suffered from the "severe" mental impairments of depressive disorder with panic disorder and post-traumatic stress disorder. *Id.* The ALJ additionally identified certain severe physical impairments: degenerative disc disease of the lumbar spine; internal derangements of the right elbow and bilateral knees; hypertension; diabetes mellitus; and clinical obesity. *Id.* The ALJ went on to determine, however, that none of these impairments rose to the level of a Listed Impairment. *Id.* at 16.

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he or she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded here that Davis had the RFC to perform "sedentary work" with limitations. Tr. 18. Those limitations included: that Davis can sit for only six hours in an eight-hour workday, and can stand or walk for only two hours; can only occasionally reach with her dominant right upper extremity; must avoid all exposure to heights and moving mechanical parts; and "in terms of mental limitations, . . .

3

should be restricted to understand, remember, and carry out, one- to two-steps instructions, with only occasional changes in a routine setting." *Id.* The ALJ did *not* include certain cognitive limitations that Davis contends he should have: difficulties in performing tasks at a consistent pace, and in sustaining concentration, an ordinary routine, and regular attendance at work. *See id.* at 24.

At step four, the ALJ considers whether, in light of the RFC determination, the claimant could perform "past relevant work." 20 C.F.R. § 404.1520(f). Here, the ALJ found that Davis could not perform her past relevant work as a psychiatric aide. Tr. 25. At step five, the ALJ evaluates whether the claimant could perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). The ALJ determined that Davis could perform such jobs, including as a "call-out operator," surveillance system monitor, or election clerk. Tr. 26. Given that conclusion, the ALJ concluded that Davis was not disabled. *Id.*

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the

4

Commissioner applied the correct legal standards.  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).[1]

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive."  42 U.S.C. § 405(g).

### III.  Discussion

Davis challenges the ALJ's evaluation of the opinions rendered by Dr. John Nikkah, a psychologist who conducted a post-hearing consultative examination of Davis in September 2019.  For the reasons set forth below, I agree that the ALJ did not sufficiently address the supportability of Nikkah's opinions.

**A.   Revised Regulations for Evaluating Medical Opinions**

The Social Security Administration repealed its "treating physician rule" prior to Davis's application for benefits.[2]  Under the revised regulations applicable here, the

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

[2] As noted above, Davis filed her application with the SSA on April 24, 2018.  The treating physician rule was repealed effective March 27, 2017, and replaced by new regulations set forth in 20 C.F.R §§ 404.1520c and 416.920c.  *See, e.g.*, *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021).

5

Commissioner "no longer needs to assign particular evidentiary weight to treating sources or their opinions." *Vellone ex rel. Vellone v. Saul*, No. 20-CV-0261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, No. 20-CV-261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). Still, the SSA commits itself to "articulate in [its] determination or decision how persuasive we find all of the medical opinions" in the case record. 20 C.F.R. § 404.1520c(b).

The new regulations require an ALJ to evaluate medical opinions and findings based on factors including, among others: (1) their supportability (*i.e.*, the extent to which a source explains his or her opinion, and supports it with objective medical evidence); (2) consistency (*i.e.*, the extent to which it is consistent with other evidence — medical and nonmedical — in the record), (3) the source's relationship with the claimant (including the length of the relationship and frequency of visits), and (4) the source's specialization (*i.e.*, education and training). *Id.* § 404.1520c(c).

The first two factors above — supportability and consistency — are the "most important factors"; accordingly, the ALJ is generally required to explain his consideration of them. *Id.* § 404.1520c(b)(2). The regulation does not require the ALJ to explain his consideration of the remaining factors. *Id.*

6

These are not especially formalistic requirements.[3] In the end, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," so long as he has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

**B.    The ALJ's Assessment of Dr. Nikkah's Opinions**

In his examination report, Dr. Nikkah expressed a litany of cognitive limitations. In a section titled "Medical Source Statement," he opined that Davis was "mildly limited" in her ability "to understand, remember, and apply simple direction and instructions" and "to interact adequately with supervisors, coworkers, and the public." Tr. 924. She was "moderately limited" in her ability to "understand, remember, and apply complex directions and instructions and use reason and judgment to make work-related decisions" and "to regulate emotions, control behavior, and maintain well being." *Id.* at 924–95. And she was "mildly to moderately limited in sustaining concentration and performing a task at a consistent pace and sustaining an ordinary routine and regular attendance at work." *Id.* at 924. Nikkah further indicated that Davis's

---

[3] Even when the treating physician rule applied, the ALJ was still free to discount a treating physician's opinion as long as he provided "good reasons" for doing so. *E.g.*, *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

7

"[d]ifficulties are caused by a combination of fatigue, distractibility, cognitive deficits, and a lack of motivation." *Id.* at 925.

Dr. Nikkah did cabin his assessment of the severity of those limitations. In the next paragraph of his report, he wrote that the examination results "appear to be consistent with psychiatric and cognitive problems, but in itself, this does not appear to be significant enough to interfere with [Davis's] ability to function on a daily basis." *Id.*

Nikkah's examination report also included a check-box form titled "Medical Source Statement of Ability to Do Work-related Activities (Mental)." *Id.* at 927–28. The boxes he checked reported a subset of the limitations he described in the narrative portion of his report: mild limitations in the ability to understand, remember, and carry out simple instructions, to make judgments on simple work-related decisions, and to interact appropriately with the public, supervisors, and coworkers; and moderate limitations in the ability to understand, remember, and carry out complex instructions, to make judgments on complex work-related decisions, and to respond appropriately to usual work situations and to changes in a routine work setting. *Id.*

The ALJ treated this single report from Dr. Nikkah as comprising three different medical source opinions: one in each of the two paragraphs of the "Medical Source Statement" section

8

of the report, *see id.* at 24, 924–25, and a third in the check-box form that followed. *See id.* at 24, 927–28. According to the ALJ, Nikkah had proffered three opinions that "[i]f taken literally . . . would result in three different mental [RFC] assessments." *Id.* at 24. Specifically, the first paragraph of the Medical Source Statement section included, among other limitations, mild to moderate limitations in "sustaining concentration and performing a task at a consistent pace and sustaining an ordinary routine and regular attendance at work." *Id.* at 924. Yet on the check-box form, in response to a question asking whether Davis's impairment affected her "ability to concentrate, persist, or maintain pace" or "adapt or manage oneself," Dr. Nikkah selected "No." *Id.* at 928. Meanwhile, the second paragraph of the Medical Source Statement section asserted that Davis's "psychiatric and cognitive problems" did "not appear to be significant enough to interfere with [her] ability to function on a daily basis." *Id.* at 925.

In response to these possible internal contradictions, the ALJ deemed Dr. Nikkah to have proffered only the "average" of these three opinions. *See id.* at 24. Specifically, the ALJ focused on the check-box form, which contained only a subset of the limitations mentioned elsewhere in Nikkah's report. *See id.* The ALJ wrote that this check-box form represented Nikkah's average opinion. *See id.* The ALJ thus discarded any

9

limitations Nikkah identified in his narrative report, but did not list on the check-box form. *See id.* As a result, the RFC assessment excluded any limitations in "sustaining concentration and performing a task at a consistent pace and sustaining an ordinary routine and regular attendance at work," *id.* at 924 — limitations that appeared in the narrative report. *See id.* at 24.

Moreover, the ALJ did not consider — at least overtly — whether this average found support in Nikkah's examination. The ALJ recited Nikkah's clinical findings, *id.* at 21–22, but did not comment on them when evaluating Nikkah's report. *See id.* at 24. Instead, the ALJ found the check-box form (and only that) "persuasive" because it reported limitations most consistent with Davis's "outpatient treatment record." *Id.* Specifically, the ALJ found that Davis's outpatient treatment record "show[ed] that her symptoms" from "persistent depressive disorder, panic disorder, and [post-traumatic stress disorder]" "rapidly came under control with the initiation of regular medication, with all symptoms adequately controlled by July 6, 2019." *Id.* at 21, 24. In other words, the ALJ credited Nikkah's check-box form (and not any conflicting portions of Nikkah's report) entirely because of its consistency with other record evidence. But the ALJ did not analyze what limitations Nikkah's examination findings supported.

10

**C.   Inadequacy of ALJ's Explanation**

The ALJ did not adequately analyze the supportability factor here. "The new regulations controlling the ALJ's assessment of medical opinions now require an ALJ to explain how persuasive she found the medical opinions she considered, and specifically, how well a medical source supports their own opinion(s) and how consistent a medical source/opinion is with the medical evidence as a whole." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).

The ALJ's decision lacks a satisfactory explanation of this type. When the ALJ determined that there were three distinguishable opinions discernible in Nikkah's submissions, the ALJ decided to credit the opinion that fell in the middle of the spectrum, rather than consider which conclusions Nikkah's examination of Davis could support and why. *See* Tr. 24. The ALJ asserted that averaging Nikkah's submissions would align Nikkah's opinion with "the claimant's outpatient treatment record." *Id.* But the ALJ did not adequately contend (at least expressly) with the extent to which Nikkah's conclusions found support in his own examination results.

11

"[W]ithout some clear discussion of the supportability factor[,] the Court is left to guess at the ALJ's reasoning, which frustrates meaningful review." *Nicole L. v. Kijakazi*, No. 20-CV-01576, 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022); *see also Vellone ex rel. Vellone*, 2021 WL 319354, at *4 ("Eschewing rote analysis and conclusory explanations, the ALJ must discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence.").

That gap in the ALJ's decision compels remand.  Courts have remanded for further agency consideration where the ALJ "did not provide any explicit analysis of [a medical opinion's] supportability," even where the ALJ otherwise referenced the medical source's clinical findings.  *Nicole L.*, 2022 WL 160274, at *8; *accord Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 17 (S.D.N.Y. 2022) ("[A]n ALJ's failure to properly consider *and explain* the supportability and consistency factors constitute grounds for remand." (emphasis added)).  This is true even where the ALJ finds a medical opinion persuasive.  *See, e.g.*, *Almonte v. Comm'r of Soc. Sec.*, No. 21-CV-3091, 2022 WL 4451042, at *8 (E.D.N.Y. Sept. 23, 2022) (remand warranted where ALJ "fail[ed] to explain the supportability and consistency factors that led the ALJ to determine that Dr. Meisel's opinion was persuasive"); *Ayala*, 2022 WL 3211463, at *16 (supportability was

12

insufficiently explained where ALJ merely indicated that the opinions were "persuasive" because they were "supported by record review" or "by examination"); *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (ALJ did not adequately analyze the supportability factor where the ALJ "did not examine what [the physicians] used to support their opinions and reach their ultimate conclusions").

Because the ALJ rejected a portion of Dr. Nikkah's report — concluding it did not reflect Dr. Nikkah's opinion — the ALJ risked "overlooking" some of Davis's limitations or restrictions, "which could [have led] to an incorrect use of an exertional category to find" that Davis was "able to do past relevant work" and an erroneous finding that she is not disabled. *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). Specifically, the ALJ formulated Davis's RFC as if Dr. Nikkah had never opined that Davis had limitations in sustaining concentration, pace, and work attendance. *See* Tr. 24. Yet below, the SSA's vocational expert testified that an individual who would be off task more than 10% of the time could not perform any of the jobs that the ALJ found Davis could perform. *See id.* at 26, 144-45. On this record, it is unclear whether the ALJ, had he credited the excluded portion of Dr. Nikkah's

13

report, would have concluded that Davis must be off task more than 10% of the time, and thus unable to perform those jobs.

## IV. Conclusion

For these reasons, the court grants Davis's motion for judgment on the pleadings and denies the Commissioner's. The matter is remanded for further proceedings consistent with this Order.

SO ORDERED.

      /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    January 25, 2024
             Brooklyn, New York